UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE MONITRONICS INTERNATIONAL, INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 1:13-MD-02493-JPB |

**DEFENDANT MONITRONICS INTERNATIONAL, INC.'S MEMORANDUM OF LAW REGARDING IMPACT OF *SPOKEO, INC. v. ROBINS* AND PROPOSED CASE MANAGEMENT SCHEDULE**

Pursuant to this Court's Order of June 8, 2016, Dkt. No. 660, Defendant Monitronics International, Inc. ("Monitronics") submits the following memorandum of law regarding its views on how the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins,* 578 U.S. ___, 136 S.Ct. 1540, 194 L.Ed.2d 635, (2016) ("*Spokeo*"), has affected this litigation and to offer its proposal for the management of this litigation should it proceed further.

**I.     *SPOKEO* MANDATES DISMISSAL OF THE SECOND AMENDED MASTER CONSOLIDATED COMPLAINT**

The instant multidistrict litigation docket is comprised of approximately two dozen actions, both putative class actions and individual actions.[1] Pursuant to the Court's case management orders of February 11, 2014 and July 29, 2014, Dkt. Nos. 23 & 169, a master consolidated complaint sets forth the claims of the putative classes (which presumably encompass

---

[1] Though this docket is entitled "*In re Monitronics International, Inc. TCPA Litigation,*" approximately one-third of the pending actions assert claims against entities other than Monitronics.

the individuals who have also filed actions that have been transferred to this docket) -- the Second Amended Master Consolidated Complaint ("SAMCC").  Dkt. No. 255.

Cumulatively, Plaintiffs assert two causes of action in the SAMCC, though not all eight plaintiffs appear to assert both claims.[2]  Specifically, Plaintiffs claim defendants violated the Telephone Consumer Protection Act, 27 U.S.C. § 227 *et seq.* ("TCPA") by: 1) "making calls, either directly or through the actions of others, using an automatic telephone dialing system [ATDS] or an artificial or prerecorded voice to cellular telephone numbers without the prior express consent of the called party, or using an artificial or prerecorded voice to a residential telephone number without the prior express consent of the called party;" and 2) "sending, either directly or through the actions of others, telephone solicitation calls to telephone numbers listed on the national Do Not Call [DNC] Registry."  SAMCC at ¶¶126-127.  While this pleading sets forth extensive factual allegations concerning the claims of eight Plaintiffs (including three who have since accepted offers of judgment and obtained judgments that have been satisfied, Dkt. Nos. 482 & 562 (Bowler), Dkt. Nos. 484 & 565 (Hough), and Dkt. Nos. 468 & 575 (O'Shea)), other than alleging they have "received illegal telemarketing calls on a residential or cellular telephone line, from or on behalf of the Defendants," nowhere do these Plaintiffs allege any harm or injuries.  *Id.* at ¶¶38-93.

### A.  The *Spokeo* Decision

The Supreme Court's decision in *Spokeo, Inc. v. Robins*, reiterated the three key elements that form the "irreducible constitutional minimum" of standing.  A plaintiff must have (1)

---

[2]  For example, Plaintiff Jason Bennett claims to have received prerecorded and ATDS calls to a cell phone, whereas Plaintiff Philip Charvat claims to have received prerecorded calls to a residential number that is listed on the national DNC Registry.  SAMCC at ¶¶37, 39, 50-54.

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 194 L.Ed.2d at 643 (citations omitted) (internal quotation marks omitted). *Spokeo* dealt primarily with the "injury in fact" requirement, the "first and foremost of standing's three elements." *Id*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 644 (citation omitted). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element [of standing]. *Id.* at 643.

The Court in *Spokeo* emphasized that the "concrete" and "particularized" prongs of injury in fact are distinct and separate concepts. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* at 644 (citing *Lujan v. Defenders of Wildlife*, 504 U. S. at 560, n. 1). In differentiating the two requirements, the Court stated that a "'concrete' injury must be 'de facto'; that is, it must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'" *Id*. at 644-45.

Importantly, the fact that the Congress may have created a statutory cause of action is not enough to create standing. As the Court stated:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. See *Summers*, 555 U. S., at 496, 129 S. Ct. 1142, 173 L.Ed.2d 1 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"); see also *Lujan*, *supra*, at 572, 112 S. Ct. 2130, 119 L. Ed. 2d 351.

*Id.* at 645. Indeed, the injury in fact requirement is not lessened or mitigated for claims asserting a violation of a federal statute. As the Court observed, "it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing. (Cit.)" *Id.* at 643-44. A plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id*. at 646.

Against this backdrop, the Supreme Court considered whether Robins, suing on behalf of himself and a putative class, had alleged sufficient injury in fact from *Spokeo*'s provision of information (though it is unclear to whom it was provided) that he was married, had children, was in his 50's, had a job and graduate degree and was "relatively affluent," all of which Robins alleged was incorrect. *Id.* at 642. Robins alleged a violation of the provision of the Fair Credit Reporting Act of 1970 requiring reasonable procedures to assure accuracy of information provided and several other portions of the Act. *Id*. at 641. The district court dismissed Robins' complaint on the grounds that he "had not 'properly pled" an injury in fact, as required by Article III" of the U.S. Constitution and the U.S. Court of Appeals for the Ninth Circuit reversed. *Id.* at 642. The Supreme Court vacated the judgment of the Ninth Circuit and remanded the case, finding that the latter court's "analysis was incomplete" as it had "overlooked" the requirement of concreteness. *Id.* at 640.

In the context of Robins' claim, that meant he had failed to allege a concrete injury --- something more than that the information about him that was provided was inaccurate. As the Court explained, "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 646; *see also Gubala v. Time Warner Cable, Inc.,* Civil Action No. 15-cv-1078, 2016 U.S.Dist. LEXIS 79820 (E.D.Wisc. June 17, 2016) (dismissing complaint for lack of standing as claim that

Defendant retained personally identifying information in violation of the Cable Communications Policy Act lacked any allegations of concrete harm.)

### B. The Application of *Spokeo* To This Case

Applying the principles of *Spokeo* to this case, each Plaintiff must allege sufficient facts to demonstrate each element of standing. This means they must specifically allege each of the following:

1) An injury in fact – one that is both particularized and concrete;
2) That is fairly traceable to the challenged conduct of the defendant;
3) That is likely to be redressed by a favorable judicial decision.

To the extent a Plaintiff is unable to make that demonstration for any call they claim is at issue, that call cannot constitute the sort of legally cognizable injury required to give standing to that Plaintiff under *Spokeo*.[3]

Plaintiffs seek recovery under one or both of the provisions of the TCPA which contain private rights of action: 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5). The former places certain restrictions on the use of an ATDS[4] or calls made using a prerecorded or artificial voice. As relevant here, that statute provides:

(1) Prohibitions. It shall be unlawful for any person within the United States,

---

[3] As an example, if a Plaintiff alleges that there are two calls at issue but is only able to allege sufficient facts demonstrating the required elements of standing for one of those calls, then the other call does not meet the requirements of a legally cognizable injury under *Spokeo*.

[4] Because the United States Court of Appeals for the D.C. Circuit is currently considering challenges to certain FCC definitions of what constitutes an ATDS, at least one district court has issued a stay post-*Spokeo* until the D.C. Circuit decides that issue. *Errington v. Time Warner Cable Inc.*, Civil Action No. 2:15-CV-02196 RSWL (DTB), 2016 U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016)

> or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. § 227(b)(1)(A) – (B). Under *Spokeo*, the bare allegation that a call was made using an ATDS – without more – is insufficient to establish the sort of concrete and particularized injury required.[5] Likewise the bare allegation that a call was initiated to a residential telephone line using an artificial or prerecorded voice – without more – is insufficient to established the sort of concrete and particularized injury required under *Spokeo*.[6]

The second part of the statute under which Plaintiffs sue is the private right of action created under 47 U.S.C. § 227(c)(5), which permits recovery in certain circumstances where a person who receives more than one call in a twelve-month period in violation of regulations adopted by the Federal Communications Commission ("FCC"). Those regulations implement a

---

[5] For example, if the cellular phone was turned off when the call was made, there could be no concrete or particularized injury in fact regardless if there was otherwise a TCPA violation because the call did not personally impact the Plaintiff.

[6] For example, if the call initiated to a residential line was not completed or if the call was never answered, then there could be no concrete or particularized injury in fact.

national Do Not Call ("DNC") registry.[7] The standing requirements enunciated in *Spokeo* apply with equal force to these purely statutory claims. Even assuming that Congress and the FCC have the authority to create a statutory violation based on that fact that a party placed a call to a number listed on the DNC registry, Plaintiffs will have to allege facts sufficient to establish that each call at issue results in a concrete and particularized injury. In this context, it means allegations sufficient to demonstrate that each plaintiff – in fact – **received** each call at issue and that such calls otherwise meet the requirements of the statute – such as the fact they registered their number on the DNC registry and that the registration was in effect at the time of each call at issue -- as well as that the call injured the Plaintiff.

It may be that some Plaintiffs can allege sufficient facts to demonstrate the sort of concrete and particularized injury required under *Spokeo* for some of the calls at issue. However, the SAMCC is completely devoid of any allegations of an "injury-in-fact… that is both concrete *and* particularized" to any of the Plaintiffs which, as the Supreme Court explained is necessary to maintain an action under Article III of the U.S. Constitution. The SAMCC certainly does not identify any injuries that "actually exist" and that affect Plaintiffs "in a personal and individual way" -- the two elements of the injury-in-fact element of standing. *Spokeo*, 194 L.Ed.2d at 644; *see* SAMCC at ¶¶39-93. Rather, it simply asserts bare procedural violations of the TCPA -- that plaintiffs claim to have received phone calls using the prohibited technology and/or calls to

---

[7] In particular, it provides that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may pursue a private right of action. 47 U.S.C. § 227(c)(5).

numbers on the national DNC registry, without anything more.[8] For these reasons, Plaintiffs have failed to allege standing to bring this action.[9]

Monitronics recognizes that *Spokeo* provides clarification and instruction of which Plaintiffs did not have the benefit at the time they filed their operative pleading. For that reason, Monitronics would not oppose allowing Plaintiffs leave to amend to see if they can allege a sufficient concrete and particularized injury, and if Plaintiffs do amend, Monitronics requests an opportunity to challenge the amended pleading, should Monitronics believe the requisite injury has not been pled. If Plaintiffs decline to amend their complaint, Monitronics requests an opportunity to formally move for dismissal of the SAMCC on the grounds outlined above.

## II. SHOULD PLAINTIFFS PROVIDE ALLEGATIONS OF CONCRETE AND PARTICULARIZED INJURY TO THE SATISFACTION OF THE COURT, *SPOKEO* LIKELY PRECLUDES CLASS CERTIFICATION

Assuming that Plaintiffs can allege an injury sufficient to meet the requirements of *Spokeo,* the Supreme Court's decision will also significantly affect the issue of class certification as it relates to this MDL. As noted, the SAMCC asserts claims on behalf of several putative classes. SAMCC at ¶¶116-125. Even prior to the recent decision in *Spokeo,* numerous district

---

[8] The allegations of the complaints in the individual and putative class actions not added to the master consolidated complaint are equally insufficient and Monitronics reserves the right to challenge these pleadings as well.

[9] A handful of courts that have addressed the application of the requirements for standing laid out in *Spokeo* to claims brought under the TCPA. One court found "concrete injury" had been asserted based on Plaintiffs' allegations that they were "required … to waste time answering or otherwise addressing widespread robocalls." *Booth v. Appstack, Inc., et al.,* Case No. C13-1533JLR 2016, U.S. Dist. LEXIS 68886, *17 (W.D. Wash. May 25, 2016). Another court found sufficient injury existed where Plaintiffs alleged their "cell phone lines were unavailable for legitimate use during the unwanted calls." *Rogers v. Capital One Bank (USA), N.A.,* Civil Action No. 1:15-cv-4016, 2016 U.S. Dist. LEXIS 73605 (N.D. Ga. June 7, 2016). In contrast, Plaintiffs here do not assert such injuries.

courts have declined to certify classes to pursue TCPA claims. *See, e.g., Shamblin v. Obama for America, et al.*, Case No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849, *17-18 (M.D. Fla. April 27, 2015) (denying certification of class to pursue claims of autodialed calls to cellphones as "there can never be common answers to the questions of whether (1) the telephone number dialed was assigned to a cellular telephone at the time of the call and (2) whether the subscriber consented to be called"); *Warnick v. Dish Network, LLC*, Civil Action No. 12-cv-9952, 2014 U.S. Dist. LEXIS 87818, *17 (D. Colo. 2014) (denying certification of class to pursue TCPA claims as "the class is not administratively feasible, and thus not ascertainable").

Moreover, standing requirements apply to class actions. Under the Rules Enabling Act, procedural rules like Rule 23 "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). This means that a class cannot contain members who would be unable to meet Article III's standing requirements on their own. Indeed, as a district court recently noted in the course of denying certification, and citing *Spokeo,* in *Sandoval v. Pharmacare US, Inc.*, Civil Action No. 15-cv-0738 (S.D. Cal. June 10, 2016), a class cannot include members who have suffered no cognizable injury.

This means that the class definition must – without the need for additional inquiry – demonstrate that each class member has standing. *See Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of certification of a plaintiff class because the proposed definition was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief"); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) (noting petitioners' argument that "exposure-only" class members lack an injury-in-fact and acknowledging need for Article III standing but turning to class certification issues first); *Id.* at

884 (Breyer, J., dissenting) (referring to the "standing-related requirement that each class member have a good-faith basis under state law for claiming damages for some form of injury-in-fact"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"). The class must therefore be defined in such a way that anyone within it would have standing.

This fact will impact the class certification inquiry in a number of ways. First, it means that the same individual standing questions raised above – such as whether the cellular phone was turned on or whether a call was even answered – must be capable of resolution in the same way for each putative class member. Second, it means that call records alone – as Plaintiffs have suggested in their pleadings will be the basis for their proposed classes – will not adequately identify class members with Article III standing. Finally, classes must be defined in a way that standing can be objectively determined without further inquiry into standing.

As Judge Groh recently noted, the "proposed class definition must not depend on subjective criteria or the merits of the case or require an extensive factual inquiry to determine who is a class member." *Paulino v. Dollar General Corp.*, Civil Action No. 3:12-cv-75, 2014 U.S.Dist. LEXIS 64233 (N.D.W.Va. May 9, 2014) at *8 (*citing Cuming v. S.C. Lottery Comm'n*, Civil Action No. 3:05-cv-03608-MBS, 2008 U.S. Dist. LEXIS 26917, *1 (D.S.C. Mar. 31, 2008) (citation omitted)). Otherwise, this results in a "fail safe" class, "one that 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'" *Id.* at *9 (*quoting Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012) and *citing Randleman v. Fidelity*

*Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (affirming denial of class certification because the class "only included those who are 'entitled to relief'" and this was an "improper fail-safe class that shields the putative class members from receiving an adverse judgment"). Therefore, unless the Plaintiffs can establish a class definition that demonstrates on its face the standing of each and every putative class member, the Court's decision in *Spokeo* will preclude certification of that class.

### III. MONITRONICS' PROPOSED CASE MANAGEMENT SCHEDULE

The Court has also asked the parties to share their views regarding how this litigation should proceed now that the stay, entered last year, has been lifted. As an initial matter, Monitronics believes a status conference with the Court and all parties towards the end of July 2016 (to accommodate existing schedules) would be helpful, particularly in light of the existence of differing views of the impact of *Spokeo* and the amount of time needed to accomplish remaining discovery. Following a status conference, Monitronics would be amenable to Plaintiffs being given leave to amend the master consolidated complaint, as discussed above, and would request an opportunity to challenge the same. Should the Court find injury in fact, as well as the other elements of standing, have been sufficiently alleged, Monitronics proposes discovery in these actions resume, pursuant to the schedule below.[10]

| Event | Plaintiff Proposed Date | Monitronics Proposes |
|---|---|---|
| Case Management Conference | July 2016 | July 2016 |
| Deadline for Plaintiffs to amend pleadings, including Master Consolidated Complaint, to allege injury | | August 1, 2016 |
| Any motions challenging amended pleadings to be | | August 22, 2016 |

---

10 Plaintiffs previously proposed the dates identified in the table below.

| | | |
|---|---|---|
| filed | | |
| Oppositions to motions challenging amended pleadings to be filed | | September 12, 2016 |
| Replies to motions challenging amended pleadings due | | September 26, 2016 |
| Depositions of Plaintiffs' Experts to be completed | | October 31, 2016 |
| Defendants' expert disclosures due | August 1, 2016 | January 6, 2017 |
| Discovery to be completed | December 19, 2016 | March 17, 2017 |
| Motions related to class certification to be filed | January 30, 2017 | April 17, 2017 |
| Oppositions to class certification-related motions to be filed | February 28, 2017 | May 17, 2017 |
| Replies in support of class certification-related motions to be filed | April 3, 2017 | June 16, 2017 |
| Mediation completed | April 17, 2017 | June 30, 2107 |
| Hearing on motions related to class certification | April ___, 2017 | July __, 2017 |

Monitronics also proposes that the Court set three to four additional status conferences to take place during the discovery period to assure that the parties are on course to complete the necessary discovery and to provide guidance to the parties should any issues arise.

**MONITRONOICS INTERNATIONAL, INC.**

By:     /s/ Jeffrey A. Holmstrand
       One of its counsel

Jeffrey A. Holmstrand (#4893)
Grove, Holmstrand & Delk, PLLC
44 ½ 15th Street
Wheeling, WV  26003
(304) 905-1961

Benjamen S. Dyer (*admitted pro hac vice*)
Margaret Carlson (*admitted pro hac vice*)
CULP & Dyer, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX  76201
(940) 484-2236

Meryl C. Maneker
WILSON TURNER KOSMO LLP
550 West C Street, Suite 1050
San Diego, CA 92101
(619) 236-9600

## CERTIFICATE OF SERVICE

Service of the foregoing DEFENDANT MONITRONICS INTERNATIONAL, INC.'S MEMORANDUM OF LAW REGARDING IMPACT OF SPOKEO, INC. v. ROBINS AND PROPOSED CASE MANAGEMENT SCHEDULE was had by filing the same with the Court's CM/ECF system.

**MONITRONOICS INTERNATIONAL, INC.**

By:     /s/ Jeffrey A. Holmstrand
    One of its counsel

Jeffrey A. Holmstrand (#4893)
Grove, Holmstrand & Delk, PLLC
44 ½ 15th Street
Wheeling, WV 26003
(304) 905-1961

Benjamen S. Dyer (*admitted pro hac vice*)
Margaret Carlson (*admitted pro hac vice*)
CULP & Dyer, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236

Meryl C. Maneker
WILSON TURNER KOSMO LLP
550 West C Street, Suite 1050
San Diego, CA 92101
(619) 236-9600